**Wiley MINOR, Petitioner,**

v.

**Robert HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

**No. 88 Civ. 5580 (KMW).**

United States District Court, S.D. New York.

Jan. 23, 1991.

Wiley Minor, pro se.

Monica R. Jacobson, Asst. Atty. Gen., N.Y. Dept. of Law, New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

In August 1988, petitioner filed this habeas corpus petition, asserting two claims for relief. The court referred the matter to Magistrate Judge Grubin on January 4, 1989. Having received the Magistrate Judge's Report and Recommendation ("Report") and the objections thereto submitted by petitioner, and having conducted

a *de novo* review of the record, the court accepts and adopts the Magistrate's Report.

For substantially the reasons set forth by Magistrate Judge Grubin, the application for writ is denied. The clerk of the court is directed to enter judgment dismissing the petition without prejudice. As the petition presents no questions of substance for appellate review, a certificate of probable cause will not issue. *Alexander v. Harris*, 595 F.2d 87, 90–91 (2d Cir.1979). We certify pursuant to 28 U.S.C. § 1915(a) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE KIMBA M. WOOD

SHARON E. GRUBIN, United States Magistrate Judge:

Petitioner *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his August 22, 1984 convictions after a jury trial in the New York State Supreme Court, New York County, of sodomy in the first degree (N.Y.Penal Law § 130.50), attempted rape in the first degree (N.Y.Penal Law §§ 110.00 and 130.35), burglary in the first degree (N.Y.Penal Law § 140.30) and assault in the second degree (N.Y.Penal Law § 120.05). He was sentenced to concurrent indeterminate prison terms of eleven to twenty-two years on the sodomy count, eleven to twenty-two years on the burglary count, seven and one-half to fifteen years on the attempted rape count and three and one-half to seven years on the assault count. The Appellate Division, First Department, affirmed the convictions without opinion on March 20, 1986, *People v. Minor*, 118 A.D.2d 1051, 499 N.Y.S.2d 1001 (1986), and the New York Court of Appeals denied leave to appeal on April 16, 1986, *People v. Minor*, 67 N.Y.2d 947, 502 N.Y.S.2d 1040, 494 N.E.2d 125 (1986). Petitioner also moved to vacate the judgment of conviction pursuant to N.Y.Crim.Proc.Law § 440.10 before the Honorable Stanley Sklar of the New York State Supreme Court, New York County, who had presided at the trial. The motion was denied on May 4, 1987, and on May 10, 1988 the Appellate Division, First Department, denied petitioner leave to appeal Justice Sklar's decision.

The petition raises the following two questions: (1) whether petitioner was denied a fair trial by comments of the prosecutor during summation, and (2) whether petitioner was denied the effective assistance of counsel at trial. For the reasons discussed below, I find that both questions must be answered in the negative, and I respectfully recommend that your Honor deny the petition.

## FACTUAL BACKGROUND

Petitioner's convictions arise from events occurring in the Manhattan apartment of Mr. and Mrs. William Ling on the morning of April 16, 1983. Construing the evidence at trial in the light most favorable to the state, *see, e.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Reddy v. Coombe*, 846 F.2d 866, 869 (2d Cir.), *cert. denied*, 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988); *Garcia v. Warden*, 795 F.2d 5, 6 (2d Cir.1986), the following was established.

The Ling apartment occupies the third and fourth floors of a building located on East 37th Street. Mrs. Ling testified that when she and her husband were home, they kept the doors to the apartment on both the third and fourth floors unlocked. On the morning of April 16, 1983 Mrs. Ling was watching television in her bedroom in the back of the fourth floor, and Mr. Ling was downstairs in the kitchen area washing dishes. Mrs. Ling testified that she lit both of two lamps in the bedroom because it was a dark morning. At about 9:30 a.m. she heard her two small dogs begin to bark and then heard a door open. She turned around towards the open door to the bedroom, expecting to see her husband coming up the stairs, and instead saw petitioner entering the bedroom. She described him at trial as a tall black man, wearing a work

shirt over a dirty red t-shirt, whose breath was foul and whose teeth were yellow and decayed. Mrs. Ling rose, walked to the door and told petitioner to go away. Petitioner instead closed the door behind him and did not reply. When Mrs. Ling reached for the door, petitioner told her not to touch it and to "shut up." He then removed a large screwdriver from his coat and again told her to "shut up" or he would hurt her with the screwdriver. Mrs. Ling offered him money to leave, but, she said, "he just said shut up, he would tell me what he wanted." Tr. 52.[1]

Petitioner next maneuvered Mrs. Ling over to the bed and told her to lie down. The sexual assault followed, accompanied by threats of physical harm, and the details Mrs. Ling related in court are not necessary to recount herein. (See Tr. 56–57.) It suffices to say that there was assuredly sufficient evidence from which the jury could find that petitioner committed the crimes for which he was convicted. (Petitioner does not challenge here the sufficiency of the evidence). During the course of the sexual abuse, Mrs. Ling attempted to extricate herself. She testified that she maneuvered until she could feel that her body was on top of the screwdriver which petitioner had placed on the bed. Petitioner, apparently realizing her attempt to retrieve the screwdriver, said, "I am going to hurt you." Tr. 53. Mrs. Ling then grabbed the screwdriver, pushed petitioner away from her and jumped up, screaming for her husband and attempting to exit the room. Petitioner pulled her back, pushed her onto the bed and punched her in the head. At this point Mr. Ling, who had heard the commotion from downstairs, entered the bedroom and yelled, "Get off of her." He then pulled petitioner away from his wife and onto the floor and punched

him in the face. Petitioner then hit Mr. Ling, who staggered backwards into a rocking chair, and petitioner shouted, "I'm going to get my screwdriver. I'm going to stick you." Tr. 54.[2]

Mr. Ling, hoping to attract the attention of the tenants who lived on the second floor, went to the doorway of the apartment and began to call for help and run down the stairs. Petitioner then pushed Mr. Ling down the stairs, jumped over him and fled.[3] He left behind a dirty gray herringbone overcoat. Mrs. Ling found her husband lying at the bottom of the stairs covered with blood. She summoned emergency assistance, and the couple was taken by ambulance to Bellevue Hospital where Mr. Ling received seventeen stitches for a wound to his head and a splint for injuries to his foot.

Subsequently, Mrs. Ling identified petitioner from photographs, at a line-up and in court.[4] In addition to Mrs. Ling's identification and the testimony of both of the Lings, petitioner was linked to the crimes through circumstantial evidence provided by the testimony of Jennifer Barrows, program director for the First Moravian Church Coffee Pot, a "drop-in" center open around the clock at Lexington Avenue and East 30th Street. She testified that she knew petitioner as a client of the center who had come intermittently since May 1981. She was shown the gray herringbone overcoat recovered from the Lings' apartment and identified it as a coat she had seen petitioner wearing that winter. She remembered the coat because it was unusual for a client of the center to have such an overcoat.

## DISCUSSION

*Ground One*

■ Petitioner's first claim herein, that comments by the Assistant District Attor-

---

1. "Tr." followed by numerals refers to page numbers of the transcribed minutes of petitioner's trial.

2. The quotation is Mrs. Ling's testimony. Mr. Ling testified that petitioner said, "I'm going to get my screwdriver. If I get my screwdriver I'm going to kill your ass." Tr. 124.

3. Mr. Ling testified that he was pushed from behind and flew forward, hitting a door at the

bottom of the steps. He said he was stunned for a moment and remembered only sitting up, feeling his head and seeing blood. Tr. 125.

4. *Mr. Ling did not identify petitioner.* He did, however, describe in his testimony physical characteristics of the assailant which matched those of petitioner.

ney during his summation violated petitioner's right to a fair trial, arises from the following portion of the summation:

> MR. JACOBSON [prosecutor]: ... Ladies and gentlemen, rape is probably one of the most horrible crimes one individual can commit against another.
>
> MR. WOJSZWILO [petitioner's counsel]: Objection.
>
> THE COURT: Sustained. This is not an analysis on the nature of crimes. The jury is to disregard it totally. Follow my instructions, each of you. Rather, we are concentrating on the evidence and the laws and arguments that are based on them. You may proceed.
>
> MR. JACOBSON: I meant to say it is a very special crime in the way or the impression that it leaves on a victim by the very nature of the way the crime is committed. A rape victim sees her attacker like no other victim of crime.
>
> MR. WOJSZWILO: Objection, your Honor.
>
> THE COURT: Sustained. We have no evidence whatsoever at this trial as a comparison of the view or impression of victims of rapes or attempted rapes and victims of any other crimes. The remarks of the Assistant District Attorney, accordingly, are stricken in this respect. They are improper and incorrect. They must be disregarded by you totally.
>
> Once again, I must ask you, will you each follow that instruction 100 percent. Thank you. Please confine yourself based on the argument of evidence.

Tr. 327–28. Petitioner contends that the prosecutor's remarks deprived him of a fair trial because they attempted to bolster otherwise weak identification evidence and to appeal to the jury to render a verdict based upon its emotional reaction to the crime.

The question for this court in the context of federal habeas corpus review is "whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). *See also United States v. Pena*, 793 F.2d 486, 490 (2d Cir.1986); *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir.), *cert. denied sub nom. Shipp v. United States*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). The instant claim may be compared to one in *Castro v. Sullivan*, 662 F.Supp. 745 (S.D.N.Y.1987), where the petitioner, Castro, was alleged to have shot and robbed William Belen and Adolfo Montenegro. Montenegro had identified Castro as one of his assailants in a pretrial line-up. The Honorable John M. Walker explained as follows:

> Specifically, petitioner objects to a prosecution argument supporting Montenegro's identification of petitioner as the perpetrator of the robbery and killing. In summation, the prosecutor described human memory of any traumatic event as "like a camera, [which] takes a picture and that picture is stored on the film and that film is memory." Thus, according to the prosecutor, an image of the individuals involved in the November 13, 1980 shooting "was burned on his [Montenegro's] mind...." *Transcript*, at 603.
>
> In this case, the prosecutor's remarks were clearly in the realm of argument, rather than a recitation of facts extrinsic to the record. Indeed, to the extent they could be construed as factual, the judge properly admonished the jury to disregard them, during his charge:
>
>> In making the factual determination on which your verdict will be based, you may consider only the testimony of the witnesses as you have heard it in this courtroom and exhibits received in evidence and the stipulations. Comments, remarks and summation by opposing attorneys are not evidence nor anything I have said with regard to the facts is evidence.
>
> *Transcript*, at 665–66. Such an instruction is sufficient to cure any prejudice that could have resulted from the prosecution's argument. *See, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974); *Payne v. Jones*, 638 F.Supp. 669, 676

(E.D.N.Y.1986) [, aff'd, 812 F.2d 712 (2d Cir.1987)]; *Snow v. Reid,* 619 F.Supp. 579, 584 (S.D.N.Y.1985).

662 F.Supp. at 752. *See also Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986).

In petitioner's case, even if we were to assume that the remarks were not properly within the realm of argument, they hardly could be seen to have rendered petitioner's trial constitutionally infirm. The trial court gave not only the standard instructions in the charge concerning what the jury should and should not consider as evidence, but also instructions to the jury that were clear, pointed and immediate to disregard those very remarks. The Second Circuit has recently affirmed that "[e]ven where the prosecutor's argument was clearly impermissible, we have been reluctant to reverse where the transgression was isolated, the trial court took swift and clear steps to correct the implication of the argument, and the evidence against the defendant was strong. *See, e.g., United States v. Cruz,* 797 F.2d [90] at 93 n. 1 [ (2d Cir.1986) ]...." *United States v. Parker,* 903 F.2d 91, 98 (2d Cir.1990). *See also Greer v. Miller,* 483 U.S. 756, 766, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987); *United States v. Tutino,* 883 F.2d 1125, 1137 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Erb,* 543 F.2d 438, 442 (2d Cir.), *cert. denied,* 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976); *Cruz v. Scully,* 716 F.Supp. 766, 772 (S.D.N.Y.1989). Moreover, petitioner did not thereafter request further instruction to the jury nor any other relief with respect to the statements. *See, e.g., United States v. Canales,* 744 F.2d 413, 431 (5th Cir.1984), *reh'g denied,* 750 F.2d 69 (5th Cir.1984) (*en banc*) ("When we are asked to reverse in these circumstances we are, in effect, asked to go against the implicit judgment

of both the trial court and the defendant's trial counsel that the trial court's corrective action was adequate and appropriate"); *Shaw v. Stone,* 506 F.Supp. 571, 576 (M.D. Ga.1981), *aff'd sub nom. Shaw v. Boney,* 695 F.2d 528 (11th Cir.1983) (per curiam); *Taylor v. Dalsheim,* 459 F.Supp. 260, 263 n. 2 (S.D.N.Y.1978), *aff'd,* 610 F.2d 807 (2d Cir.1979), *cert. denied,* 444 U.S. 1048, 100 S.Ct. 738, 62 L.Ed.2d 735 (1980).

It is quite clear that the challenged language of the prosecutor, viewed in the context of the identification evidence at trial, the entire argument before the jury and the trial judge's instructions can hardly be said to have been so unfair as to have denied petitioner due process of law. Ground One of the petition must, therefore, be denied.[5]

*Ground Two*

Petitioner's second claim is that he was denied his right to the effective assistance of counsel because his trial counsel failed to present an alibi defense and failed to demonstrate in front of the jury that the overcoat found at the Lings' apartment was too small a size to fit petitioner.

The Supreme Court set forth the standards for evaluating a claim of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and has reaffirmed them in *Kimmelman v. Morrison,* 477 U.S. 365, 374–75, 106 S.Ct. 2574, 2582–83, 91 L.Ed.2d 305 (1986), and *Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986). *See also Tsirizotakis v. LeFevre,* 736 F.2d 57, 62–63 (2d Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Arce v. Smith,* 710 F.Supp. 920, 924–25 (S.D.N.Y.), *aff'd,* 889 F.2d 1271 (2d Cir.1989), *cert. denied sub nom. Arce v. Berbary,* —— U.S. ——, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990). Be-

---

**5.** The petition also claims under Ground One as follows: "Then the prosecutor made comments concerning the fact that petitioner was a *street person* and that a lesson ought to [be] sent to such people." (Petition at 5.) However, petitioner does not cite any part of the transcript with respect to his assertion nor does he elucidate it beyond this one sentence. A thorough review of the transcript does not reveal any

such comments by the prosecutor. The closest remarks I find to what petitioner alleges was said are those by which the Assistant District Attorney merely argued that petitioner, as an indigent who frequented the "soup kitchen" run by Ms. Barrows, would have had a motive to break into the Lings' apartment to steal property. (*See* Tr. 330–31.)

cause the purpose of the sixth amendment's requirement of effective assistance of counsel is to ensure a fair trial, "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. at 374, 106 S.Ct. at 2582. *See also Strickland v. Washington*, 466 U.S. at 686, 104 S.Ct. at 2063–64; *United States v. Ditommaso*, 817 F.2d 201, 215 (2d Cir.1987).

The Court explained in *Strickland* that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating two elements. *See also United States v. Aiello*, 900 F.2d 528, 532 (2d Cir.1990); *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990); *Cuevas v. Henderson*, 801 F.2d 586, 589 (2d Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987); *Mitchell v. Scully*, 746 F.2d 951, 954 (2d Cir.1984), *cert. denied*, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985); *Lawson v. United States*, 648 F.Supp. 378, 380 (S.D.N.Y.1986). First, he must show not simply that his counsel erred, but that the errors were not within the realm of reasonableness under the professional norms prevailing at the time of trial. *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65. Although the Court has not established specific guidelines for evaluating the reasonableness of counsel's actions, there is to be applied a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel has "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *See also Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir.1987); *Cuevas v. Henderson*, 801 F.2d at 589–90.

Second, the petitioner must show that his attorney's performance prejudiced his defense. Thus, if a petitioner can establish that his counsel's performance fell below the prevailing professional norms, he must also show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. *See also Kimmelman v. Morrison*, 477 U.S. at 375, 106 S.Ct. at 2582–83; *United States v. Jones*, 900 F.2d 512, 519 (2d Cir.1990); *United States v. Reiter*, 897 F.2d 639, 645 (2d Cir.1990); *Whaley v. Rodriguez*, 840 F.2d 1046, 1051 (2d Cir.), *cert. denied*, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 360 (1988); *United States v. Ditommaso*, 817 F.2d at 215; *Solomon v. Harris*, 749 F.2d 1, 2 (2d Cir.1984), *cert. denied*, 470 U.S. 1087, 105 S.Ct. 1851, 85 L.Ed.2d 149 (1985); *Mitchell v. Scully*, 746 F.2d at 954. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. A petitioner cannot satisfy this second prong of the analysis by showing only that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. Rather, a petitioner must demonstrate that absent counsel's errors, "the decision reached would reasonably likely have been different," considering the totality of the evidence. *Id. See also United States ex rel. Roche v. Scully*, 739 F.2d 739, 742–44 (2d Cir.1984). Although analysis of an ineffective assistance claim involves the two elements of counsel's error and petitioner's prejudice, as a petitioner making the claim must meet the burden of establishing both, it is not necessary for a reviewing court to address both elements if the petitioner makes an insufficient showing on either one. *Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. at 2069–70. *See also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987), *cert. denied sub nom. Annabi v. United States*, 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988); *Mitchell v. Scully*, 746 F.2d at 954.

With respect to his contention concerning an alibi defense, petitioner alleges that a report by a private investigator showed the existence of such a defense but that his counsel did not present any of the evidence found by the investigator. In denying this claim which petitioner raised in his § 440.10 motion, Justice Sklar wrote as follows:

> The motion is denied because it is totally without merit.
>
> The motion is grounded upon the defendant's claim that "evidence" unearthed by an investigator on behalf of defendant "would prove that defendant herein could not have committed the crimes charged against him."
>
> The motion also urges that because of the defendant's attorney's failure to present such evidence, Mr. Minor was not represented by competent counsel—such incompetence rising to the level of ineffective assistance of counsel.
>
> The reality is that Mr. Minor claimed during the trial, and upon sentencing, that he could not have committed the crimes of which he was found guilty.
>
> The additional reality is that an extraordinary presentation was made at the trial that overwhelmingly identified the defendant as the perpetrator....
>
> Defendant's counsel was thorough, careful, experienced and devoted. *The reality is that the "evidence" referred to by defendant simply did not exist. One might note that with respect to the instant motion, defendant does not even specify what the claimed evidence is.*

Memorandum Decision, May 4, 1987, pp. 1–2 (emphasis added).

In presenting this claim to this court, petitioner similarly did not state what the evidence was that allegedly would have shown his innocence. Rather, again, he simply asserted in conclusory form that his sixth amendment rights were violated because counsel did not present this unspecified proof. Petitioner, who is apparently claiming that he was in some location other than the Lings' bedroom at the time of the crime, should be able to say where he was, yet his submissions on this petition are bereft of any explanatory indication by him. In opposition to the petition, respondent herein noted petitioner's persistent failure to set forth the nature of the alleged alibi defense. However, in his Traverse filed in response to the respondent's papers, petitioner stated to the contrary—that the nature of his defense had been presented to the state courts in his § 440.10 motion together with a copy of the investigator's report:

> Respondent erroneously claims that petitioner has never before set forth the nature of the alibi defense .that could have and should have been offered. This is not so! Petitioner fully briefed this issue on his C.P.L. § 440.10 motion, and even attached a copy of the report of the private investigator to show that an alibi defense was viable.

Traverse ¶ 13. Yet, petitioner still did not state for this court what the alleged evidence was, nor did the various copies of the § 440.10 motion papers in this court's file show any such explanation or report. Accordingly, on June 19, 1990 I issued an order directing petitioner to submit to me a copy of the investigator's report or, if he no longer had one available, to set forth the specific substance of its contents.

Petitioner has now submitted a copy of the report by the investigator, Leroy L. Witherspoon. The document shows that Witherspoon, hired by petitioner's counsel, took painstaking efforts to pursue all possible leads in an unsuccessful attempt to establish evidence that would aid petitioner. The only portions of the report concerning a possible alibi are those that recount conversations Witherspoon had with petitioner's mother and sister who stated petitioner had been staying at his brother's house in Brooklyn on the weekend in question (although they, apparently, had not been present with him). However, when Witherspoon spoke with petitioner's brother, his brother's wife and another sister, they all stated that petitioner had been at his brother's house on several occasions, but they could not remember whether he had been there on the date of the crime,

April 16, 1983, or, in fact, any specific date he had been there. Moreover, after having learned of this possible alibi from petitioner's mother and sister, Witherspoon interviewed petitioner and reported as follows:

> I asked if he could have been at his brothers [sic] house that Saturday April 16, 1983. He said·he had been there a few times but he was not there at that time.

Report of Leroy L. Witherspoon, dated November 2, 1983, p. 3.

In short, petitioner's claim that his attorney was deficient in failing to present at trial evidence uncovered by the investigator is simply not supported by the investigator's findings, and petitioner offers nothing else. As Justice Sklar wrote in his denial of petitioner's § 440.10 motion on this claim, "the 'evidence' referred to by defendant simply did not exist." (*See* page 1017, *supra*.)

It is quite clear, moreover, that petitioner's counsel did not simply overlook the work done by the investigator but rather was well aware of Witherspoon's efforts and involved in them. Counsel's deliberate decision not to present any evidence arising from them, even if any existed, can hardly be said to constitute a violation of the sixth amendment. That the decision was a considered one was shown at one point during the course of the trial when petitioner asked to address the court. Petitioner told the court that he did not understand why no witnesses were being called on his behalf since there had been an investigator retained who had interviewed him and other people. The following colloquy then occurred:

> THE COURT: Mr. Wojszwilo [petitioner's counsel], is there anything that you want to say? If not, I will respond.
>
> MR. WOJSZWILO: For the purpose of clarification, I would want to indicate an investigator was engaged by me to speak to Mr. Minor and to take certain action as a result of his conversations with Mr. Minor and also with me.
>
> That investigator's name is Leroy Witherspoon. He spoke to Mr. Minor, I believe on two occasions.

> THE DEFENDANT: Yes.
>
> MR. WOJSZWILO: At Riker's Island.
>
> He spoke to me on several other occasions. I am satisfied to this day with the efforts that were made and speaking to various people and trying to speak to other people without going into—I don't think it is appropriate the result of that investigation.
>
> I have indicated to Mr. Minor that it is not my intention to call any witnesses nor to—well, to call any witnesses.

Tr. 250–51. The court then at some length explained to petitioner that he could present any witnesses he and his counsel wished to present.

As discussed earlier, there is a strong presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. *See also Darden v. Wainwright*, 477 U.S. at 185–86, 106 S.Ct. at 2473–74. Petitioner here has failed to even specify what witnesses or other evidence he believes counsel should have presented. The Second Circuit has repeatedly instructed that "we will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." *United States v. Ditommaso*, 817 F.2d at 215. *See also United States v. Aiello*, 900 F.2d at 532–33; *United States v. Nersesian*, 824 F.2d at 1321–22; *Mills v. Scully*, 826 F.2d at 1197; *Cuevas v. Henderson*, 801 F.2d at 590; *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983). The record here shows clearly that petitioner's attorney made a tactical choice not to attempt to present an alibi defense. On the record that has been presented to us, not only was such a decision reasonable, but it appears to have been the only rational choice. Petitioner has presented no evidence to the contrary. In *Sanchez v. Scully*, 613 F.Supp. 1065 (S.D.N.Y.1985), Judge Sprizzo of this court addressed as follows a petitioner's claim that his trial counsel had failed to investigate and interview properly potential witnesses to establish an alibi defense:

In view of counsel's efforts and eventual success with respect to finding and interviewing these witnesses, the Court rejects petitioner's claim that his counsel's performance in investigating and interviewing fell below the standard of reasonable competence.

\*     \*     \*     \*     \*     \*

To the extent petitioner objects to counsel's failure to call other alibi witnesses at trial, the Court rejects this as a matter of trial strategy which does not rise to the level of a constitutional violation.

613 F.Supp. at 1068 and n. 5. Similarly, Judge Glasser of the Eastern District of New York held in another case in which a petitioner claimed his counsel had violated his sixth amendment right by failing to call alibi witnesses that " 'complaints of uncalled witnesses are not favored in federal habeas review, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.' " *Caronia v. Jones*, No. CV 84–4779, slip op. at 1 (E.D.N.Y. June 30, 1988) (1988 WL 83186) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)). In *Cepulonis v. Ponte*, 699 F.2d 573 (1st Cir.1983), where a petitioner claimed he had presented his trial counsel with an alibi but counsel had failed to investigate it, the court held:

[J]ust as counsel is not required to waste the court's time pursuing frivolous legal motions ... so too counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial as a matter of law, or, as here, as a matter of fact and of the realities of proof, procedure, and trial tactics.

699 F.2d at 575. Petitioner's failure to specify to this day the alleged proof that could have been offered to establish an alibi[6] confirms that his attorney's conduct in this regard hardly constituted ineffective assistance. *See also Arce v. Smith*, 710 F.Supp. at 925–26. *Cf. Farinaro v. Kirk*, 675 F.Supp. 75, 82 (E.D.N.Y.1987), *appeal dismissed*, 872 F.2d 1021 (2d Cir.1989); *People v. Ford*, 46 N.Y.2d 1021, 416 N.Y. S.2d 536, 389 N.E.2d 1058 (1979) (mem.).[7]

With respect to petitioner's contention that his trial counsel was also deficient because he did not have petitioner physically put on the overcoat found in the Lings' apartment in front of the jury to demonstrate that it did not fit him, again, we cannot second-guess what was clearly a matter of trial tactics, strategy and style. Nor can we say that, even assuming that the failure to have petitioner model the coat could be deemed to have been professional error, such error was such as to have so affected the proceedings or prejudiced petitioner as to have rendered the representation a violation of the sixth

---

6. Although petitioner consistently refers to Witherspoon's report, the only information therein that relates to a possible alibi is the statements by petitioner's mother and sister that petitioner had been at his brother's house over the weekend in question. However, petitioner himself told Witherspoon he had not been there at that time.

7. In addition to the cited cases, petitioner may also wish to review in this regard portions of Chapter 4 of the American Bar Association's Standards for Criminal Justice. Standard 4–5.2, for example, makes it clear that decisions on trial strategy rest with counsel even when such decisions may be contrary to the wishes of his client. The Commentary thereto explains:

The lawyer must be allowed to determine which witnesses should be called on behalf of the defendant. Similarly, the lawyer must be allowed to decide whether to object to the admission of evidence, whether and how a witness should be cross-examined, and whether to stipulate to certain facts. Cases that have reversed convictions for failure of counsel to call certain witnesses, cross-examine, object to evidence, and the like, have been decided not on the ground that counsel should have heeded the client's wishes on such matters, but on a determination that these actions of counsel in these cases were not strategic or tactical decisions but, rather, revealed ineptitude, inexperience, lack of preparation, or unfamiliarity with basic legal principles amounting to ineffective assistance of counsel.

Standards for Criminal Justice § 4–5.2 Commentary at 4.67–4.68 (1980).

amendment. "The sixth amendment does not entitle a defendant to perfection but to basic fairness." *United States v. Aiello*, 900 F.2d at 534. *See, e.g., Healey v. New York*, 453 F.Supp. 14, 16–17 (S.D.N.Y. 1978), where this court stated:

> The general rule is that habeas relief will not be granted where it is shown only that there have been tactical or strategical errors of counsel, or that the case could have been better tried. *Rickenbacker v. Warden*, 550 F.2d 62, 66 (2d Cir.1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); *United States ex rel. Pugach v. Mancusi*, 310 F.Supp. 691, 716 (S.D.N.Y.1970), *aff'd*, 441 F.2d 1073 ([2d Cir.]), *cert. denied*, 404 U.S. 849, 92 S.Ct. 156, 30 L.Ed.2d 88 (1971).

*See also Cuevas v. Henderson*, 801 F.2d at 590; *Journet v. Coombe*, 649 F.Supp. 522, 524 (S.D.N.Y.1986); *Grant v. United States*, 447 F.Supp. 732, 736–37 (S.D.N.Y.), *aff'd*, 591 F.2d 1330 (2d Cir.1978).

■ Petitioner also appears to raise on this petition additional ways in which he contends his attorney was deficient which were not, however, presented to the New York courts. Specifically, he asserts that his counsel should have shown the jury petitioner's front teeth which he alleges were "perfect" in contrast to Mrs. Ling's description of someone with yellow and decayed teeth. He further summarily contends in one sentence in what may perhaps be called the "grab-bag" approach, without any additional elaboration, as follows: "Other errors consisted of not hav[ing] protected his client's speedy trial rights (tried 14 months after arrest), gave a brief, discursive summation, failed to properly cross examine the officer on his defective identification procedures, etc." Petition at 5. Because petitioner never presented these alleged instances of counsel's ineffectiveness to the trial court or the state appellate courts, he has not exhausted them. In order to exhaust a claim of ineffective assistance of counsel for federal habeas corpus purposes, it is required that each factual contention of a petition have been presented for the state courts' considera-

tion so that they, after determining what occurred, will have had the opportunity to pass on the claims. To have raised only certain of the alleged instances of ineffectiveness to the state courts does not satisfy the exhaustion requirement of 28 U.S.C. § 2254(b). *See, e.g., Twitty v. Smith*, 614 F.2d 325, 332–33 (2d Cir.1979); *Castillo v. Sullivan*, 721 F.Supp. 592 (S.D.N.Y.1989); *Williams v. Scully*, Civ. No. 87–742 (E.D. N.Y. Sept. 15, 1989) (1989 WL 113164); *Muhammad v. Kuhlmann*, No. 88 Civ. 4483, slip op. at 6 (S.D.N.Y. June 27, 1989) (1989 U.S.Dist Lexis 7156) (1989 WL 79051). *See also Peoples v. Fulcomer*, 882 F.2d 828, 830–32 (3d Cir.1989); *Carlisle v. Housewright*, 619 F.Supp. 1370 (D.Nev. 1985). As petitioner raises these additional contentions for the first time herein, the petition is "mixed," containing both exhausted and unexhausted claims, and may be dismissed in its entirety by the court under the "total exhaustion" doctrine enunciated in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, "[t]he proposition that *Rose v. Lundy* ... requires dismissal of mixed petitions containing both exhausted and unexhausted claims is subject to some doubt in this Circuit...." *Crawford v. Scully*, No. 86 Civ. 6542, slip op. at 1 n. 1 (S.D.N.Y. Oct. 16, 1987) (1987 U.S.Dist Lexis 9331) (1987 WL 19023). The respondent herein has not raised as a defense the petitioner's failure to exhaust these claims, and I find that it is more appropriate to exercise our discretion in this case at this time to dismiss these contentions on their merits than to require a further series of state and federal proceedings. This is so because petitioner presents no colorable claim, and to require exhaustion would, rather than serve the interests of comity and federalism, merely waste judicial resources. *See Granberry v. Greer*, 481 U.S. 129, 135, 107 S.Ct. 1671, 1675–76, 95 L.Ed.2d 119 (1987); *Plunkett v. Johnson*, 828 F.2d 954, 956 (2d Cir.1987) ("[D]istrict courts ... must not adopt a per se rule that in the case of nonexhaustion the petition must be dismissed"); *Flores v.*

*Scully,* No. 89 Civ. 1527, slip op. at 9 (S.D.N.Y. Oct. 13, 1989) (1989 WL 123097) ("When a court is convinced that the petition lacks merit and when the State has waived any exhaustion defense, application of the exhaustion doctrine would merely result in useless litigation in the state courts"). *See also Sanders v. Sullivan,* 863 F.2d 218, 221 (2d Cir.1988); *Boykins v. Kelly,* No. 87 Civ. 6608, slip op. at 15 (S.D.N.Y. Apr. 13, 1990) (1990 U.S.Dist Lexis 4231) (1990 WL 52294); *Carroll v. Hoke,* 721 F.Supp. 446, 449 n. 1 (E.D.N.Y. 1989); *Lane v. LeFevre,* 705 F.Supp. 88, 92–93 (N.D.N.Y.), *aff'd,* 891 F.2d 277 (2d Cir.1989); *Caronia v. Jones,* No. CV 84–4779 (E.D.N.Y. June 30, 1988) (1988 WL 83186).

■ Petitioner's contention that his counsel violated his constitutional rights because he did not "show" to the jury petitioner's front teeth must be rejected for the same reasons discussed above with respect to his contention that counsel should have had petitioner model the overcoat in front of the jury. (*See* pages 1019–1020, *supra.*) Such a claim simply questions a matter of counsel's strategy and hardly amounts to a violation of the sixth amendment. (I might note, moreover, that petitioner, who was present in the courtroom throughout his trial, had ample opportunity to show his front teeth to the jurors.) With respect to his "grab-bag" of other alleged instances of counsel's ineffectiveness, petitioner also fails to state any valid claim because "[o]ne claiming ineffective assistance of counsel must identify specific acts or omissions; general statements and conclusionary charges will not suffice." *Knighton v. Maggio,* 740 F.2d 1344, 1349 (5th Cir.), *cert. denied sub nom. Knighton v. Louisiana,* 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984). *See also Green v. McGougan,* 744 F.2d 1189, 1191 (5th Cir. 1984) (ineffective assistance claim that counsel "filed no timely or appropriate motions relative to suppression" denied because insufficient to raise issue for review);

*United States ex rel. Bonner v. Wyrick,* 426 F.Supp. 1205, 1209 (E.D.Mo.1976), *aff'd,* 563 F.2d 1293 (8th Cir.1977), *cert. denied,* 439 U.S. 913, 99 S.Ct. 286, 58 L.Ed.2d 260 (1978) (no issue for review because "claim is not cast in a specific factual context, and the nature of the legal premise relied upon is not clear"). Rule 2(c) of the Rules Governing § 2254 Cases requires that a petition "specify" the grounds for relief and set forth "the facts supporting each of the grounds thus specified." In *Aubut v. Maine,* 431 F.2d 688 (1st Cir.1970), the First Circuit Court of Appeals explained as follows:

> We do not accept "notice" pleading in habeas corpus proceedings. Were the rule otherwise, every state prisoner could obtain a hearing by filing a complaint composed, as is the present one, of generalizations and conclusions. The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error. Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence.

431 F.2d at 689. In *Bernier v. Moore,* 441 F.2d 395 (1st Cir.1971) (per curiam), the same court explained further:

> The fundamental purpose of habeas corpus would be undermined if the writ were prostituted by holding it out as available upon mere "notice" or token pleading, without any showing of entitlement.... Habeas corpus is a special proceeding to right wrongs, not a routine procedure to search for them....
>
> Mere assertions of ineffective counsel, for example, are not enough. Nor is it sufficient to refer to an act or omission of counsel, as does petitioner in this case, without indicating why it constituted gross impropriety or prejudicial misconduct.

441 F.2d at 396. Our own Circuit Court of Appeals, citing the foregoing cases with approval, has more recently stated:

> Despite our firm conviction that the pleading requirements in habeas proceedings should not be overly technical and stringent, it would be unwise to saddle

district judges with the burden of reading through voluminous records and transcripts in every case. As the First Circuit stated, "[h]abeas corpus is a special proceeding to right wrongs, not a routine procedure to search for them...."

*Williams v. Kullman,* 722 F.2d 1048, 1051 (2d Cir.1983) (citations omitted). In *Harris v. Attorney General of the State of New York,* No. 81 Civ. 7083 (S.D.N.Y. July 25, 1984) (1984 WL 661), Judge Haight of this court, after considering the specific contentions asserted of ineffective assistance of counsel in a *pro se* petition, stated as follows with respect to an additional contention sought to be asserted:

> Petitioner also states in his petition that "Since I am convicted of circumstantial evidence my lawyer did not move to seek a lesser charge." It is unclear what this means, and since petitioner, in violation of Rule 2(c) of the Rules for habeas corpus petitions, 28 U.S.C. § 2254, states no facts in support of this claim, it will not be considered.

Slip op. at n. 1. The court denied the entire petition with prejudice.

Petitioner's one-sentence claim here, commencing with "Other errors consisted of" and culminating in "etc.," must be similarly rejected. Petitioner does not indicate why the date of his trial may have been in violation of his "speedy trial rights" nor how he was prejudiced thereby; he does not indicate in what way he believes counsel's cross-examination of the police officer was improper; nor does he indicate what is

meant by "etc." by which he apparently intends to indicate additional allegations of ineffectiveness. In any event, however, I have thoroughly reviewed the entire transcript of petitioner's trial (including counsel's summation and cross-examinations), and I do not find any deficiencies apparent in counsel's performance that would support a sixth amendment claim. Indeed, I find nothing to indicate that the opinion of the trial judge, Justice Sklar, that "[d]efendant's counsel was thorough, careful, experienced and devoted" was incorrect. Memorandum Decision, May 4, 1987, p. 2.

In sum, as petitioner has failed to show that his attorney's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. at 2064, Ground Two of the petition should be denied.[8]

## CONCLUSION

For the reasons set forth herein, I respectfully recommend that your Honor deny this petition.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Kimba M. Wood, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Wood. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of

---

**8.** By letter dated April 19, 1990 petitioner requested that I hold consideration of his case in abeyance pending his obtaining two sets of records he wished to present. The first consists of dental records which he contends will show the condition of his teeth were not as described by Mrs. Ling. The second set is documents from Bellevue Hospital's Psychiatric Unit, where he claims to have stayed from April 6 through April 13, 1983, which he says will list his belongings and show that he was not in possession of the gray herringbone coat at that time. (The crime herein, however, occurred on April 16, 1983.) Even assuming this evidence is

available and will show what petitioner contends it will show, I am not willing to delay needlessly the disposition of this petition at this time because such evidence obviously would not affect my determinations herein. I might note, in addition, that three months have now passed since petitioner made this request but he has submitted nothing to date. (Moreover, he recently submitted the investigator's report pursuant to my order of June 19 but neither mentioned these alleged additional records again nor renewed his request that I hold the petition in abeyance.)

Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: New York, New York

July 23, 1990