**Frank SPERINGO, Petitioner,**

v.

**Herbert MCLAUGHLIN, Superintendent of Hudson Correctional Facility Defendant.**

**No. 00 CIV. 7964(VM).**

United States District Court, S.D. New York.

April 25, 2002.

Abraham Hecht, Forest Hills, NY, for Petitioner.

Frank Shapiro, Hudson, NY, pro se.

Ellen Sue Handman, Robert M. Morgenthau, District Atty., New York County, New York City, for Respondent.

### DECISION AND ORDER

MARRERO, District Judge.

Petitioner Frank Speringo ("Speringo"), represented by counsel, filed a petition for habeas corpus for relief from his New York state conviction of manslaughter and third degree assault. The State of New

York (the "State") opposed his petition. For the foregoing reasons, Speringo's petition is denied.

## I. *BACKGROUND*

Speringo was charged with second-degree murder and first-degree assault on October 25, 1996. The State's case against Speringo was that on September 17, 1996, after drinking alcohol, Speringo, an off-duty New York City police officer, carried his loaded gun into a restaurant in the Bronx. There he continued to drink alcohol, precipitated a fight with Enrique Paulino ("Paulino") and shot two other restaurant patrons. In that incident, Maria Rivas ("Rivas") was fatally shot and Robert Castillo ("Castillo") was wounded. On September 26, 1996, Speringo was convicted of lesser included charges: second-degree manslaughter and third-degree assault.

At trial, and over Speringo's trial counsel's ("Trial Counsel") objections, the State introduced Section 105–01 of the Police Department's Patrol Guide which provides that officers are authorized to carry guns while off-duty but are recommended not to carry them when the officer intends to drink alcoholic beverages (the "Patrol Guide"). (Trial Transcript ("Tr.") at 428–29, 779–80.) The Court permitted its introduction as relevant to show whether Speringo had a conscious disregard for a known risk. (Tr. at 435.)

According to restaurant personnel who testified at trial, Speringo already had been drinking before he arrived at the restaurant between 4:30 and 5 a.m. on September 17, 1996, with Ramon Vargas ("Vargas") and another man. Despite the restaurant's rule against serving alcohol at that hour, the waitress served the group drinks perhaps because Speringo was a police officer. (Tr. at 281–83.) At neighboring tables sat Paulino and his companions. Although none knew the precise cause, Speringo subsequently started a fight with Paulino that resulted in the shooting of Rivas and Castillo, two other restaurant customers.

According to the testimony of three witnesses—Paulino, Carlos Sanchez ("Sanchez") and Elvis Paulino ("Elvis")—Speringo first tripped Paulino as he passed Speringo's table. Vargas diffused the situation by explaining that Speringo was merely drunk and the men shook hands. After that interaction, Speringo threw ice at Paulino. In response, Paulino approached Speringo to ask: "what's wrong with him." Speringo responded by grabbing Paulino's shirt and the two fell down. (Tr. at 140.) Bystanders shouted warnings that Speringo was a cop and the men were separated by other customers, including Paulino's companions. Indeed, it appeared that the crowd drew back from Speringo upon learning that he was a police officer. After the two were separated, Paulino looked down to straighten his shirt. When he looked up, Paulino saw Speringo pointing a gun at the head of Sanchez. (Tr. at 141, 319, 822.) Paulino grabbed Speringo's arm, bent it upward, and the gun fired a shot that struck Rivas and Castillo. (Tr. at 141.) Paulino, with the aid of his brother Elvis and the restaurant's manager, disarmed Speringo. The manager confiscated the gun. At that point Paulino and his friends left.

According to the State's ballistics evidence, Rivas and Castillo were both hit by a single bullet. The bullet wounded Castillo in the arm before fatally wounding Rivas in the head. The ballistics report further indicated that the bullet removed from Rivas's body was consistent with those fired from Speringo's gun. (Tr. at 777–78.) Results of a fingerprint report were introduced at trial: seven latent fingerprints were found on Speringo's gun

but only two could be used for identification purposes. (Tr. at 742.) Neither fingerprint matched Speringo's. (Tr. at 729, 734.)

Speringo put on a defense. First, he testified and admitted to having had alcohol that night. (Tr. at 877, 883–84, 915.) He denied tripping or throwing ice at Paulino. (Tr. at 892.) He stated that Paulino approached him aggressively and grabbed Speringo's shirt, causing him to slip off his chair. The two men fell to the floor. On the floor, Paulino hit Speringo a couple of times and Elvis kicked him. (Tr. at 892–94.) Also while he was on the floor, Speringo's shirt came undone and his gun was revealed. Paulino attempted to take the gun when Speringo pushed him off. Speringo stood up carrying the gun with his finger on the safety guard. (Tr. at 894–98.) He was surrounded by Paulino, Elvis and their companions when Paulino grabbed at the gun and put his finger on the trigger. During the struggle between Speringo, Paulino and Sanchez, the gun went off. (Tr. at 899–400.) Speringo argued that he was not the one who killed Rivas or Castillo.

After the shooting, Speringo went to Columbia Presbyterian Hospital. There was no evidence that he saw a doctor for treatment of injuries he suffered from the fight or to evaluate whether he was under the influence of alcohol. Trial Counsel introduced photographs of Speringo's injuries taken at some point after the fight.

Robert Gianelli ("Gianelli"), executive officer of the New York City Police Department's Special Operations Division, also appeared for the defense. Gianelli testified that, at Columbia Presbyterian Hospital several hours after the shooting, he met with Speringo and found him fit for police duty rather than inebriated.

Trial Counsel did not call Vargas as a witness. According to Speringo, Trial Counsel did not personally interview Vargas prior to making the decision not to call Vargas. However, Trial Counsel did have a private investigator working for the defense interview Vargas.

During summation, the State focused on the jury's role in evaluating witness credibility. In that vein, the prosecutor commented on the "honesty and the decency" of the restaurant employees who testified. (Summ. at 30.) He opined on the interests and motivations of each witness, and vouched for the credibility of other witnesses called by the State (Summ. at 7, 38–40, 42, 52, 63–64). Finally, the prosecutor commented on Speringo's testimony and credibility. (Summ. at 7, 67–95.) The jury returned a verdict on the lesser included charges.

Speringo filed a direct appeal raising four issues, whether: (1) testimony regarding the Patrol Guide concerning the carrying of weapons by officers who are off-duty, which provisions are precatory, was properly received into evidence; (2) the evidence was sufficient to sustain the verdict; (3) the prosecutor's summation constituted misconduct; and (4) the sentence was excessive. Of these direct appeal issues, Speringo raises only the first and third in his habeas petition.

On appeal, Speringo first argued that the Patrol Guide evidence should not have been introduced in a criminal prosecution to show a standard of conduct. (*See* Defendant–Appellant's Brief, at 15–18 (relying on New York state law).) This error was not harmless, he reasoned, because "instead of focusing on what happened, the jury was told to focus instead on whether defendant violated an internal 'rule.' " (*Id.* at 18.)

Speringo's third argument on appeal concerned prosecutorial misconduct and was grounded on Trial Counsel's objection

to the prosecutor's comments upon Speringo's failure to call Vargas as a witness. Although the objection was sustained, Speringo believed the trial court ought to have taken more drastic corrective measures. As additional grounds, Speringo argued that the prosecutor improperly expressed his personal belief that Speringo was guilty, had committed perjury on the stand and the State's witnesses were credible. (*Id.* at 21–23 (relying on New York state law).) Speringo did not argue that his rights under the federal Constitution were violated.

The State opposed Speringo's direct appeal, relying only on New York state law in its brief. The New York State Supreme Court, Appellate Division, denied Speringo's appeal. In particular, it found that the Patrol Guide evidence was properly admitted into evidence and that Speringo's challenge to the State's summation was not preserved for appeal. Nevertheless, the Appellate Division commented that were it to reach those claims, it would find that:

> [T]he challenged comments were responsive to the defense summation and were based on the evidence, and that, since defendant presented a defense, the People properly commented on defendant's failure to call the father of his girlfriend [Vargas].

*People v. Speringo*, No. 9967/95, Slip. Op. at 2 (N.Y.App. Div. 1st Dep't Feb. 23, 1999) (the "Direct Appeal"). Speringo sought to appeal the issue of the introduction of the Patrol Guide into evidence. The New York Court of Appeals denied Speringo permission to appeal. *See People v. Speringo*, No. 9967/95, Slip. Op. at 1 (N.Y. May 5, 1999.)

Speringo obtained new counsel and brought a collateral attack in New York State Supreme Court, New York County, to vacate the judgment, made pursuant to N.Y.Crim. Proc. L. ("CPL") § 440.10 and 440.30, asserting that (1) Speringo was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article 1, Section 6 of the New York State Constitution and (2) Speringo was denied access to exculpatory evidence allegedly contained in the fingerprint report, in violation of the disclosure requirement set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State opposed Speringo's collateral attack.

The State Supreme Court denied Speringo's collateral attack in its entirety. *See People v. Speringo*, No. 9967/95, Slip Op. at 2 (N.Y.Sup.Ct. July 24, 2000) (the "Collateral Attack"). The Supreme Court found that, even though the fingerprint report was not listed on the Voluntary Disclosure Form or the *Rosario* material list of prior statements made by witnesses for the prosecution, *see People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), "the transcript of the trial makes perfectly clear that counsel had received this fingerprint report and had decided to exploit the State's failure to determine to whom the two prints 'of value' belonged, since they did not belong to defendant." Collateral Attack at 3.

Speringo moved for leave to appeal. The Appellate Division, First Department, denied Speringo leave to appeal. *See People v. Speringo*, No. M—4768, Slip. Op. at 1 (N.Y.App. Div. 1st Dep't Sept. 28, 2000). On October 23, 2000, Speringo filed the instant petition.

## II. *DISCUSSION*

Speringo's petition for the extraordinary relief of habeas corpus is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act (hereinafter "AEDPA"). Under AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim

that was "adjudicated on the merits" in the state court unless the state court decision is either contrary to clearly established federal law or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Morris v. Reynolds,* 264 F.3d 38, 46 (2d Cir.2001) (citing *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

▆▆▆▆ Clearly established federal law refers to the holdings only, not the dicta, of the United States Supreme Court. *See Morris,* 264 F.3d at 46. The state court's application of clearly established federal law must be objectively unreasonable, not merely erroneous. *See Williams,* 529 U.S. at 387 n. 14, 120 S.Ct. 1495; *accord Clark v. Stinson,* 214 F.3d 315, 320–21 (2d Cir. 2000).

## A. PROCEDURAL DEFAULTS

Speringo seeks habeas corpus relief on four legal theories. First, he claims that his Sixth Amendment right to effective assistance of counsel was denied by Trial Counsel's failure to: (1) obtain a copy of, and request sanctions for the State's failure to produce, the fingerprint report; (2) order particular individuals to submit their fingerprints for comparison purposes; (3) personally interview a witness before deciding against calling the witness; (4) obtain hospital records or witnesses; (5) object to the Prosecution's summation; and (6) request a justification defense charge. As a second ground for relief, Speringo argues that the trial court should not have permitted the introduction of the Patrol Guide into evidence.

Speringo's third claim is that the prosecutor's summation violated his Fifth Amendment right to a fair trial by "repeatedly vouching for the People's witnesses, repeatedly denigrating Petitioner and his testimony, interjected his own opinion, commented on Petitioner's failure to call a witness, told the jury that in order to believe the Petitioner the jury would have to conclude that all of The State's main witnesses deliberately made up a story." (Petition for a Writ of Habeas Corpus, dated October 10, 2000 ("Pet." at 6.)) Finally, Speringo claims that the State's deliberate failure to produce the fingerprint report violated his rights under *Brady*.

The State argues that because Speringo did not raise in his Direct Appeal or Collateral Attack several of the arguments he now presents in his petition, the entire petition should be dismissed for failure to exhaust administrative remedies. In particular, the State asserts that Speringo did not argue at any stage of his appellate proceedings that: (1) Trial Counsel was ineffective for not having objected to the Prosecutor's comments during summation; (2) the evidentiary ruling permitting introduction of the Police Patrol Guide violates federal law; and (3) the State's summation constitutes prosecutorial misconduct.

Opposing the State's contention regarding his claim of ineffective assistance of counsel claim, Speringo argues that there were, and currently are, no available state remedies open to him because Trial Counsel failed to object during trial. Concerning the Patrol Guide and the prosecutorial misconduct during summation, Speringo concedes that he did not exhaust these claims. Further, he states that "there are no further state procedural avenues to raise these claims." (Reply Memorandum of Law in Support of Frank Speringo's Petition for a Writ of Habeas Corpus, at 2.)

▆▆▆▆ A federal court cannot grant a petition for habeas corpus unless the prisoner has exhausted his claims in state court.

*See O'Sullivan v. Boerckel,* 526 U.S. 838, 839, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Under prior law, courts were required to dismiss an entire habeas petition if it presented a mix of exhausted and unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 519–20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 125 (2d Cir. 1995). However, the AEDPA provides that: "[A]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(2). The AEDPA also provides that a Court may grant a petition if it appears that "there is an absence of available state corrective remedies." 28 U.S.C. § 2254(b)(1)(B)(i).

In response to the AEDPA's new mandate concerning unexhausted claims, the Second Circuit conformed its guidance to the district courts, instructing that a court should either (1) dismiss only the petition's unexhausted claims, and exercise discretion to stay further proceedings on the remaining, exhausted claims, or (2) dismiss the petition in its entirety. *See Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.2001). The Second Circuit has suggested that a stay would be preferable in many cases, but, that the stay should be explicitly conditioned on the "prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered

and returning to federal court within a similarly brief interval, normally 30 days after the state court exhaustion is completed." *Id.* at 381.

■ At the same time, if it appears that a claim has never been presented to the state court, and yet there is an "absence of available state corrective process" as provided for under 28 U.S.C. § 2254(b)(1)(B)(i), theoretically the habeas court may deem the claim exhausted. *See Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001) (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997)).[1] However, in that situation the habeas court would then find the claims to be procedurally defaulted, which is regarded as a disposition of the habeas petition on the merits. *Id.* at 90. A petitioner's failure to present a claim in a timely fashion during appellate review can constitute a procedural default of the claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (citing *Coleman v. Thompson,* 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). To avoid such a dismissal, a "petitioner must show cause and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Id.* (citing *Coleman,* 501 U.S. at 748–50, 111 S.Ct. 2546).

■ To exhaust state remedies, a petitioner must fairly present his federal claims to the state courts. This means

---

**1.** Some courts observed a tension between the Second Circuit's decisions in *Aparicio* and *Pesina v. Johnson,* 913 F.2d 53 (2d Cir.1990). In *Pesina,* the Second Circuit declared that federal courts "have no authority to declare as a matter of state law that an appeal from the denial of [state court motion for collateral relief] is unavailable". *Pesina,* 913 F.2d at 54. On that ground, these courts have declined to dismiss claims that they deem exhausted under 28 U.S.C. § 2254(b)(1)(B)(i) as procedurally defaulted. *See, e.g., Rowe v. New*

*York,* No. 99 Civ. 12281, 2002 WL 100633, *4 (S.D.N.Y. Jan.24, 2002). *Pesina* involved failure to seek leave to appeal a writ of coram nobis brought pursuant to CPL § 440.10 to the New York Court of Appeals. Here, however, Speringo sought leave to appeal, but was denied. Thus, it is clear that to the extent that Speringo had state remedies available, he has exhausted them and no further corrective mechanisms remain available to him.

that the petitioner must first apprise the state court that the basis of his claim was not only a violation of state law, but also a denial of rights guaranteed by the United States Constitution. The petitioner must have presented both the factual and legal arguments on which he bases his petition. *See O'Sullivan*, 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir.1997); *see also Aparicio*, 269 F.3d at 89.

▋ A petitioner will have alerted the state court of his claim's basis in federal law if he relied on: (a) pertinent federal cases employing federal constitutional analysis; (b) state cases employing federal constitutional analysis in like factual situations; (c) a claim asserted in "terms so particular as to call to mind a specific right protected by the Constitution"; or (d) alleging facts within the "mainstream of constitutional litigation." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982). Regarding a claim's factual basis, to the extent that the evidence presented for the first time on the habeas petition merely supplements the claim, the habeas court need not dismiss it. *See Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir.1994). But, if the evidence fundamentally alters the claim by casting it in a "significantly different light," the petition should be dismissed because the state court did not have a fair opportunity to review it. *Id.* The doctrine of exhaustion also requires that the petitioner raise these claims in the highest state court capable of reviewing the claim. *See Levine v. Commissioner of Correctional Services*, 44 F.3d 121 (2d Cir.1995).

Thus, if Speringo failed to raise particular factual and legal grounds for his claims in the state courts, and no state remedy remains open to him at this stage, those claims will be dismissed. Against the backdrop of the foregoing principles, the Court must address individually each of the three claims identified by the State. However, the Court will reach the merits of the remaining, exhausted claims below. (*See infra*, discussion at II.B. and II.C.)

1. *Ineffective Assistance of Counsel*

a. *Inclusion of new factual ground for claim*

The requirement that a petitioner exhaust state remedies has added significance as applied to a claim for ineffective assistance of counsel. A claim asserting ineffective assistance of counsel may be based on one allegation, or on the cumulative effect of several allegations. *See Caballero*, 42 F.3d at 740–41 (citing *Sanford v. Senkowski*, 791 F.Supp. 66, 68 (E.D.N.Y. 1992)). Speringo bases his claim on individual allegations as well as on their cumulative effect.

▋ One of his allegations, that Trial Counsel was ineffective for failing to object during summation, was not raised on direct appeal or through collateral attack. This evidence does not recast Speringo's entire Sixth Amendment claim in a significantly different light. *See Caballero*, 42 F.3d at 741. Rather, it appears to be merely another instance of what the New York courts characterized as "yet another example of an unsuccessful defendant blaming his lawyer for unsuccessful strategies." *People v. Speringo*, No. 9967/95, Slip Op. at 1 (N.Y.Sup.Ct. July 24, 2000). Thus, Speringo's assertion of this factual basis here for the first time does not warrant dismissal of his entire Sixth Amendment claim. *But cf. Rowe*, 2002 WL 100633, at *3 (stay granted for ineffective assistance of counsel claim). Further, it appears that Speringo has exhausted the state remedies available to him without ever raising this allegation as ground for ineffective assistance of counsel. As the

state courts were not afforded an opportunity to rule on the claim, in the interests of comity, therefore, the Court will deem the claim exhausted but procedurally defaulted, and dismisses this claim.

### b. *"Cause and Prejudice"*

Speringo may be asserting ineffective assistance of counsel and actual innocence as excusing him from the exhaustion requirement. Although the Court does not construe Speringo's petition and pleadings with the same leniency it grants *pro se* petitioners, *see, e.g., Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (liberal construction of *pro se* petition for habeas corpus), the Court addresses Speringo's suggestion, in part because the State was aware of these arguments and therefore had opportunity to respond to them.

■■■■■ A prisoner must "demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter,* 529 U.S. 446, 450, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (emphasis in original). The cause requirement may be satisfied by a showing that counsel's errors were so egregious as to constitute a violation of the Sixth Amendment. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To show prejudice, a prisoner must show "not merely that errors ... at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original); *see also Murray,* 477 U.S. at 494, 106 S.Ct. 2639.

■■■ Speringo seems to claim that Trial Counsel's failure to object to the prosecutor's comments during summation constituted ineffective assistance of counsel. Again, the Appellate Division's decision indicated that, although Speringo had not preserved the issue for appeal, the prosecutor's comments during summation were proper, the import of which is that it would not have been considered error under relevant state practice for counsel to have refrained from objecting. The Court does not disagree with the Appellate Court's assessment.

Even if such failure to object were deemed ineffective assistance of counsel, Speringo has made no showing of how these comments worked to his actual and substantial disadvantage. Rather, despite substantial eye witness testimony that Speringo was inebriated and the aggressor during the fight, Trial Counsel was effective in obtaining for him an acquittal of the more serious charges. Thus, the Court will not excuse Speringo's failure to exhaust state remedies.

### c. *"Fundamental Miscarriage of Justice"*

■■■ Alternately, a federal habeas court might consider an unexhausted claim if the petitioner shows that failure to review it will result in a fundamental miscarriage of justice, such as the case where an innocent person is convicted. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Thus, a petitioner bears the burden of showing he is actually innocent. The threshold showing is high because entertaining claims of actual innocence during habeas review is very disruptive to the finality of criminal convictions and imposes a burden on the trial court. *See Herrera v. Collins,* 506 U.S. 390, 417,

113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Absent new, exculpatory evidence, even a meritorious claim of a constitutional violation may be insufficient grounds for excusing a procedural default on the grounds of a miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

■■■ In the instant case, Speringo argues that he is "criminally excused" from liability based on an affirmative defense of justification which he believes is the equivalent of a claim of actual innocence. However, Speringo provides only conclusory allegations and does not provide new evidence or other demonstration regarding this affirmative defense. In the absence of substantive submission, and in light of the substantial evidence on the record which would support his conviction, the Court declines to excuse Speringo's procedural default on the grounds of miscarriage of justice.

### 2. *Evidentiary Ruling Allowing Patrol Guide Into Evidence*

■■■ Habeas Corpus relief is not granted to remedy errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In his petition, Speringo asserts for the first time that the trial court's admission of the Patrol Guide into evidence violated his "due process" and "equal protection" rights under the United States Constitution. On direct appeal he had argued that the admission of that evidence violated state laws, only. Neither Speringo nor the New York courts cited to federal law on this point. *See Daye*, 696 F.2d at 191. Speringo concedes this claim was not exhausted. Furthermore, and as the parties agree, no state remedies remain available to Speringo in this regard. Accordingly, the Court deems this claim exhausted and procedurally defaulted. As there is no credible assertion of "cause and prejudice" that would excuse Speringo's failure to exhaust this claim, the Court dismisses it.

### 3. *Prosecutorial Misconduct During Summations*

Speringo's petition raises the issue of whether the prosecutor's comments during summation were improper. Although the Appellate Division denied Speringo's appeal of that issue as not preserved, it went on to comment that the prosecutor's comments were proper. *See* Direct Appeal, at 2. Speringo did not assert this claim in his application for permission to appeal to the New York Court of Appeals. Nor did Speringo include this issue in his state Collateral Attack.

Speringo also has challenged his conviction on the grounds that his counsel's failure to object to these comments during trial constituted ineffective assistance of counsel. (*See supra*, discussion at II.A.1.) As already discussed, however, Speringo has failed to demonstrate how such comments caused him prejudice. Accordingly, the Court determines that this claim is procedurally defaulted and dismisses Speringo's petition on the merits of that claim.

### B. *Ineffective Assistance of Counsel*

A defendant's Sixth Amendment right to effective assistance of counsel is violated if his counsel's representation fell below an objective standard of reasonableness and that deficient performance actually prejudiced the defendant. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The party asserting ineffective assistance of counsel must overcome a "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not

defend a particular client in the same way." *Id.* It follows that reasonable, but unsuccessful, strategic choices cannot provide the basis of a claim for ineffective assistance of counsel. *See United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir.1990.) A counsel's deficient performance violates the federal Constitution if there is a reasonable probability that, but for the attorney's deficient performance, the outcome would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. As already described, the Court will consider the prejudicial effect of the individual allegations and their cumulative effect. (*See supra*, discussion at II.A.1.)

1. *Failure to Obtain a Copy of or Request Sanctions Against the Government for Failure to Produce the Fingerprint Report*

 A fingerprint report was conducted on Speringo's gun. Such a report must be provided to defense counsel pursuant to CPL § 240.20(1)(c). *See People v. Bennett*, 75 Misc.2d 1040, 349 N.Y.S.2d 506, 529 (Sup.Ct.1973). If the report were favorable to Speringo, the prosecution's failure to produce it upon request would be error. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2] Speringo claims that Trial Counsel's failure to object to the prosecutor's non-production of the report was error.

Here, however, the State Supreme Court, in connection with Speringo's Collateral Attack, found that Trial Counsel actually had received the report. *See* Collateral Attack, at 3. The state court's findings of fact are presumed to be correct "unless the petitioner can rebut them by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Speringo has not presented any evidence or argument that was not presented to the State Supreme Court. Speringo's argument that during trial he had to urge his reluctant Trial Counsel to question witness Detective Feeks about the fingerprints found on the gun, was presented to the Supreme Court. Speringo states that Trial Counsel was not informed of the fingerprint analysis until Detective Feeks testified, (Pet.'s Mem., at Ex. E, ¶¶ 5–7), but, of course, Speringo lacks personal knowledge of what Trial Counsel knew. Trial Counsel did not submit any affidavit on this point.

This Court has no reason to doubt that in ruling on Speringo's Collateral Attack the state court was fully apprised of and considered Speringo's argument before making its factual determination. Thus, Speringo failed to carry his burden and the Court declines to disturb the state court's finding of fact. In light of that finding, Speringo's argument that his counsel should have requested sanctions against the prosecution for failure to produce the fingerprint report was not error and cannot support a claim for ineffective assistance of counsel warranting habeas relief.

2. *Failure to Order a Comparison of Fingerprints*

 Speringo argues that neither the prosecution nor Trial Counsel requested that Paulino, Elvis or Sanchez provide fingerprints for comparison to those found on the gun. Speringo asserts that the prosecution's failure was deliberate and that Trial Counsel's failure was incompetent. Again, Speringo bears to burden of overcoming the strong presumption of that Trial Counsel's conduct was professional and competent. More specifically, where ordering a fingerprint analysis risks the

---

**2.** Speringo conceded that there is no *Rosario* issue here. (Memorandum of Law in Support of Frank Speringo's Petition for a Writ of Habeas Corpus ("Pet.'s Mem."), at 21.)

creation of inculpatory evidence, and where alternative arguments are available, the tactical decision to forgo such analysis by itself may not be unreasonable. *See Brito v. United States,* 818 F.Supp. 57, 59 (S.D.N.Y.1993). Here, the State Supreme Court concluded that Trial Counsel's "strategy with respect to this fingerprint issue was a reasonable one." Collateral Attack, at 3.

Trial Counsel's performance concerning the fingerprint matter cannot be declared incompetent because without a specific identification of the fingerprints found, Trial Counsel was afforded maximum leeway to argue that other persons fired the gun. Trial Counsel had the leeway to suggest that Paulino, Elvis or Sanchez were lying about not firing the gun because of the unidentified prints. The prints, if identified, would have limited Trial Counsel's argument. Indeed, the prints might have undermined the defense's theory of the case. The probative value, too, would have been low in light of the agreed fact that the gun that fired the fatal shot here in question, and that was confiscated from Speringo after the shooting, was Speringo's.

In this light, Trial Counsel's strategy of keeping the maximum amount of flexibility for argument, and to insulate the defense theory from potentially inculpatory information, was reasonable. Indeed, the defense's overall strategy may be viewed as successful insofar as Speringo was convicted only of lesser included offenses. As such, the Court cannot find that Trial Counsel's failure to request comparison fingerprints was unprofessional or deficient.

### 3. *Failure to Personally Contact a Witness*

 Speringo further faults Trial Counsel for failing to personally contact

Vargas. The decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistant of counsel. *See United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987). Such a claim is disfavored in habeas review because " 'allegations of what a witness would have testified are largely speculative.' " *Minor v. Henderson,* 754 F.Supp. 1010, 1019 (S.D.N.Y.1991) (citations omitted).

Speringo's own briefs belie this claim of error. Vargas was not completely overlooked by counsel. Rather, Trial Counsel's investigator took Vargas's statement. (*See* Respondent's Appendix in Support of Declaration Opposing Petition for a Writ of Habeas Corpus, Ex. J, ¶ 16.) Speringo concedes that Vargas's statement varies from Speringo's. For instance, Vargas states that after a Hispanic male approached Speringo to ask "What are you looking at," Speringo stood up, and was then pushed to the floor by about 15 other men. Thus, Vargas's recollection is significantly different from Speringo's testimony. (*See id.*) In light of such inconsistencies, and the potential damage such inconsistencies might cause if subjected to cross-examination, Trial Counsel's decision against personally interviewing or calling Vargas cannot be declared error supporting habeas relief.

### 4. *Failure to Obtain Hospital Records*

 Speringo further faults Trial Counsel for failing to "produce witness from hospital or hospital records", apparently from either Columbia Presbyterian Hospital or First Choice Medical Center. (Pet. at 5.) In his brief, Speringo states that it was incompetent for Trial Counsel to fail to find records or witnesses from Columbia Presbyterian hospital and to

seek First Choice Medical Center records after the close of the State's case. Speringo claims that this evidence, and witness, if any, would have corroborated his version of the events early on September 17, 1996, namely, that he was not drunk and that he had been seriously beaten by Paulino and his companions.

Speringo did not submit any evidence with his habeas petition to show that hospital records or witnesses from his visit to Columbia Presbyterian Hospital on September 17, 1996 exist or support his claim. To the contrary, Speringo admitted to having had multiple drinks at the restaurant that night and even before entering the restaurant at approximately 4:30 a.m.

Speringo submitted hospital records reflecting a visit he made to First Choice Medical Center on September 18, 1996 for treatment of his injuries from the fight. (*See* Pet. Mem. at 25, Ex. G.) The records reflect that Speringo's sleep was "interrupted" and that he had "multiple contusions" and tenderness about the neck, shoulder, elbow and hand. Viewed by itself, this evidence is not dispositive of anything, as it appears consistent with both the State's and Speringo's case.

As explained immediately above, a habeas petitioner's complaint that a witness was not called is disfavored because of the speculative nature of such claims. *See Minor*, 754 F.Supp. at 1019. Likewise, the decision to call witnesses is a tactical one that does not readily constitute professional incompetence. *See Nersesian*, 824 F.2d at 1321. Although Speringo argues that such records or witnesses would have helped his defense, he does not provide any documentary evidence or other compelling support for that assertion. Furthermore, Speringo argues that Trial Counsel should have sought out and called a civilian, rather than Gianelli, to testify that Speringo was not under the influence of alcohol. However, to the extent that Trial Counsel selected a law enforcement officer to testify on this point may have been a tactical decision.

In summary, then, Trial Counsel's failure to investigate medical records or witnesses prior to trial does not constitute a basis for a claim of ineffective assistance of counsel. Even if Trial Counsel's conduct constituted unprofessional error, Speringo's claim that the outcome would have been different but for Trial Counsel's failure to investigate is not supported by the First Choice Medical Center record itself. Likewise, Speringo's assertion that the Columbia Presbyterian Hospital records or a civilian witness, if any, would have shown that Speringo was not under the influence of alcohol is speculative and concerns one of Trial Counsel's tactical decisions. In light of the State's evidence that Speringo had been drinking, and Speringo's own admission of that fact when he testified, the Court is not persuaded that the verdict would have been different but for Trial Counsel's failure to investigate Columbia Presbyterian Hospital records or witnesses, if any.

### 5. Failure to Object During Summation

As already explained, the Court deems Speringo's claim for ineffective assistance of counsel on the basis of Trial Counsel's failure during summation to object to certain prosecution statements to be procedurally defaulted. Accordingly, this claim is dismissed. (*See Supra*, discussion at II.A.1.)

### 6. Failure to Request Justification Defense Charge

 Speringo claims his counsel committed error by failing to request the trial court to charge the jury on the affirmative defense of justification. If a trial

court, viewing the evidence in the light most favorable to the accused, determines that the trial record "sufficiently supports a claimed defense, it should instruct the jury as to the defense, and must when so requested. A failure by the court to charge the jury constitutes reversible error." *People v. Padgett*, 60 N.Y.2d 142, 468 N.Y.S.2d 854, 456 N.E.2d 795, 797 (1983). Under New York law, a justification defense is warranted where a defendant "(1) reasonably believed that the [defendant's alleged assailant] was about to use deadly physical force; and (2) he had satisfied his duty to retreat or was under no such duty." N.Y. Penal Law § 35.15; *People v. Watts*, 57 N.Y.2d 299, 456 N.Y.S.2d 677, 442 N.E.2d 1188, 1189–90 (1982). The reasonableness of defendant's belief must be assessed "from the point of view of the particular defendant under the standard of a reasonable person in defendant's circumstances at the time of the incident." *People v. Wesley*, 76 N.Y.2d 555, 561 N.Y.S.2d 707, 563 N.E.2d 21, 22 (1990). A duty to retreat exists unless the person claiming the defense was in his own home or was not the first aggressor. *See Watts*, 456 N.Y.S.2d 677, 442 N.E.2d at 1190. Inconsistency between a justification charge and a defendant's testimony that he did not commit the crime charged does not deprive a defendant of the right to the charge. *See Padgett*, 468 N.Y.S.2d 854, 456 N.E.2d at 795 (citations omitted).

The evidence at trial did not support the issuance of a justification charge because there is no reasonable view of the evidence supporting the proposition that Speringo reasonably believed his attackers were about to use deadly force against him. According to Speringo's testimony, he was surrounded by unarmed people who attempted to take his gun from him. He pushed them off, keeping his finger on the safety guard. During a struggle the gun fired. But Speringo testified that he did not fire the gun at all. (Tr. at 900–01.) More importantly, Speringo never stated that he feared Paulino would use deadly force against him. Rather, he expressed a preoccupation with maintaining possession of the gun he had carried for nine years. (Tr. at 900.) Finally, there is no evidence that Speringo attempted to retreat.

Thus, the evidence at trial did not support a finding that the issuance of a justification charge was warranted under the applicable standards. Because such a charge might have confused the jury, Trial Counsel's decision against requesting the instruction does not constitute ineffective assistance, and the trial court's not issuing such instruction was not error.

### 7. *Cumulative Effect of Allegations*

Speringo asserts that "the cumulative effect of the errors magnified the harm." (Pet.'s Mem. at 29.) The Court, however, has not found that any of the individual grounds on which Speringo bases his claim for ineffective assistance of counsel fall outside the wide range of reasonable professional assistance of counsel. Even considering these allegations in combination, the Court cannot say that the cumulative effect of these particular allegations rendered Trial Counsel's performance deficient.

Accordingly, the Court need not consider whether the outcome of the trial would have been different had Trial Counsel not acted as he did.

### C. *Prosecutorial Misconduct Based on the Failure to Produce the Fingerprint Report*

As already discussed, *see supra* discussion at II.B.1., the state court ruling on Speringo's Collateral Attack found that Trial Counsel in fact had access to the fingerprint report. Speringo has not re-

butted the presumption of validity to which all state court findings of fact are entitled. *See* 28 U.S.C. § 2254(e)(1). Thus, the Court denies Speringo's petition for habeas corpus on this ground.

### III. *CONCLUSION*

For the foregoing reasons, it is hereby

ORDERED that petitioner Frank Speringo's petition for a writ of habeas corpus is denied; and it is finally

ORDERED that the Clerk of Court close this case.

As Speringo has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011, 1014–16 (2d Cir.1997). The Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**