**Elvis CASTILLO, Petitioner,**

v.

**James WALSH, Superintendent, Respondent.**

**No. 05 CIV. 4499(VM).**

United States District Court, S.D. New York.

Aug. 3, 2006.

Elvis Castillo, Fallsburg, NY, pro se.

## DECISION AND ORDER

MARRERO, District Judge.

### I. INTRODUCTION

Pro se petitioner Elvis Castillo ("Castillo") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Castillo was convicted in New York State Supreme Court, New York County, of six counts each of first and second degree robbery and was sentenced to an aggregate term of 30 years' imprisonment. In his petition, Castillo asserts that he is entitled to the writ because (1) he was deprived of a fair trial on account of the trial court's failure to give limiting instructions on uncharged crimes evidence, (2) the evidence adduced at trial was insufficient to support conviction on two counts of the indictment, (3) he received ineffective assistance from his trial counsel, and (4) he was denied due process because the trial court did not issue a curative or adverse inference charge or hold an independent source hearing with regard to certain in-court witness identifications. For the reasons set forth below, Castillo's petition is denied.

### II. BACKGROUND [1]

Castillo was arrested on August 14, 2000 at Joe DiMaggio Sporting Goods in Queens, New York following a call to the police about an impending robbery in the store. The police officer on the scene arrested Castillo after the store manager alerted him to a gun laying beneath a jacket Castillo had been observing. Castillo later conceded that the gun belonged to him but said he purchased it for protection in his job as a taxi driver. Castillo was not charged with robbery in connection with his arrest in Queens, but on September 6, 2000, he was charged in connection with three previous robberies in Manhattan, specifically robbing three people at A Tech Enterprises on July 15, 2000, one person at Sahara Furniture on July 26, 2000, and two people at R & F Furniture on August 1, 2000. [2] Two co-defendants, Cesar Mateo and Jorge Delacruz, were also charged and each pled guilty to two counts of first degree robbery. Castillo was offered and rejected a 25-year sentence in satisfaction of the indicted and un-indicted crimes.

On June 21, 2001, following a jury trial, Castillo was convicted in New York State Supreme Court, New York County (the "trial court"), of six counts each of first and second degree robbery in violation of New York State Penal Law § 160.15(4) and § 160.10(1). Castillo was sentenced to an aggregate term of 30 years' imprisonment.

---

**1.** The factual summary below derives from Castillo's and Respondent's submissions to this Court, as well as from their earlier submissions to the state court, specifically: Brief for Defendant–Appellant, dated February 2003 ("Def.Br."); Appellant's Pro Se Supplemental Brief, dated October 24, 2003 ("App. Br."); Petitioner's Memorandum of Law in Support of his Petition for a Writ of Habeas Corpus, undated, filed May 9, 2005 ("Pet. Mem."); Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated February 15, 2006 ("Resp.Mem."); and Petitioner's Response to the People's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus,
undated, filed March 27, 2006 ("Pet.Resp."). Except where specifically quoted, no further reference to these documents will be made.

**2.** New York County Indictment 5570/00 charged Castillo and his co-defendants with first and second degree robbery of Jimmy Lee, Chun–Ja Kim, and Young Kim at A Tech Enterprises. New York County Indictment 6350/00 charged Castillo and his co-defendants with first and second degree robbery of Tariq Abdullah at Sahara Furniture, and Ivan Canals and Claudio Hernandez at R & F Furniture.

In February 2003, Castillo appealed his conviction to the New York State Supreme Court, Appellate Division (the "Appellate Division"). His counsel on appeal, Andrew C. Fine, argued that (1) Castillo was deprived of a fair trial because evidence of his apprehension in Queens (an uncharged crime) was admitted without a limiting instruction to the jury as to its use in assessing Castillo's involvement in the other robberies, (2) there was insufficient evidence to support a conviction on counts alleging Castillo took money from Chun–Ja Kim at A Tech Enterprises, and (3) Castillo's sentence was excessive. In October 2003, Castillo filed a pro se supplemental brief in which he added two additional claims: (1) his trial counsel, Ruth Yang, did not provide effective representation, and (2) the trial court abused its discretion by not issuing a curative or adverse inference charge or holding an independent source hearing with respect to certain in-court identifications of Castillo.

On January 13, 2005, the Appellate Division unanimously affirmed Castillo's convictions. *See People v. Castillo*, 14 A.D.3d 390, 786 N.Y.S.2d 916 (App. Div. 1st Dep't 2005). The Appellate Division found that Castillo's arguments concerning the uncharged crimes evidence were unpreserved and declined to review them, and that no basis existed to reduce his sentence.[3] The Appellate Division further stated that it had considered and rejected Castillo's remaining claims in his original and pro se supplemental brief. In February 2005, Castillo sought leave to appeal to the New York Court of Appeals. His request was denied on March 11, 2005. *See People v. Castillo*, 4 N.Y.3d 829, 796 N.Y.S.2d 584, 829 N.E.2d 677 (2005). On April 21, 2005, Castillo timely filed this petition for a writ of habeas corpus.[4]

## III. DISCUSSION

As a starting point, the Court notes that Castillo is a pro se litigant. As such, his submissions must be held "to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citation omitted). The Court must read his submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citation omitted).

## A. LEGAL STANDARD FOR HABEAS RELIEF

A petitioner in custody pursuant to a judgment of a state trial court is entitled to habeas relief only if he can show that his detention violates the United States Constitution or federal law or treaties of the United States. *See* 28 U.S.C. § 2254(a). Before seeking federal relief, however, a petitioner generally must have exhausted all available state court reme-

---

3. The Appellate Division noted, however, that were it to review the uncharged crimes claims it would find the evidence necessary to link Castillo to the revolver and thus the charged crimes, and that any error resulting from inclusion of the evidence would be harmless in light of the "overwhelming evidence of defendant's guilt." *Castillo*, 786 N.Y.S.2d at 916.

4. Under 28 U.S.C. § 2244(d)(1), a one-year limitation period exists for state prisoners seeking federal habeas corpus review. The limitation period starts running from the latest of four procedural outcomes, including the expiration of time to seek direct review of a conviction. Castillo filed his petition before the expiration of time to seek direct review, and thus his application for habeas relief was filed before the statute of limitations even began running. Respondent does not dispute the timeliness of Castillo's petition. (*See* Resp. Mem. at 15.)

dies. *See* 28 U.S.C. § 2254(b), (c).[5] To do so, the petitioner must have fairly presented his federal claims to the highest available state court, setting forth all of the factual and legal allegations he asserts in his federal petition. *See Daye v. Att'y Gen.,* 696 F.2d 186, 191–92 (2d Cir.1982) (internal citations omitted).

Most of Castillo's claims are exhausted. As Respondent concedes, Castillo raised his claims surrounding uncharged crimes evidence, insufficient evidence, lack of curative charge or independent source hearing, and part of his ineffective assistance of counsel claim before the highest available state court.[6] (*See* Resp. Mem. at 16.) As will be discussed below, however, Castillo raised the balance of his ineffective assistance of counsel claim for the first time in his reply brief to this Court. These claims are unexhausted and cannot be reviewed by this Court.

### 1. State Court Disposition of Claims

■ A federal court's ability to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on procedural grounds. A state court adjudicates a petitioner's federal claims on the merits when it: (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). A claim resolved on the merits is finally resolved, with res judicata effect, on substantive rather than procedural grounds. *See id.* at 311; *see also Diaz v. Herbert,* 317 F.Supp.2d 462, 481 (S.D.N.Y.2004).

With the exception of Castillo's uncharged crimes and length of sentence claims, the Appellate Division considered and summarily dismissed Castillo's claims without explanation.[7] As there is no indication that dismissal was based on procedural grounds, this Court considers the Appellate Division to have adjudicated these claims on the merits. *See Sellan,* 261 F.3d at 312, 314; *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001).

■ Where a state court has decided a petitioner's federal claims on the merits, this Court may grant habeas relief only if the state court's decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court precedent]" or "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a [different] result." *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ Alternately, state court review of a petitioner's claims may result in a judgment based on state law grounds that are independent of the federal questions raised and that are adequate to support the judgment. *See Lee v. Kemna,* 534 U.S. 362,

---

5. Following the passage of the AntiTerrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, a federal habeas court may also deny an application on the merits even if the petitioner has not exhausted all available state remedies. *See* 28 U.S.C. § 2254(b)(2).

6. Castillo raised these claims in the Appellate Division and sought leave to appeal their rejection to the New York Court of Appeals.

7. Castillo does not challenge the length of his sentence in his petition to this Court.

375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (*citing Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Garcia v. Lewis*, 188 F.3d 71, 76–78 (2d Cir.1999). Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotations and citations omitted); *see also Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir.1996). In such cases, a federal court is generally barred from reviewing the petitioner's claims.[8]

▆ In all such procedural default cases, a federal habeas court may review a petitioner's claims only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). As to the first test, "cause" is defined as " 'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). As to prejudice, the petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." *United States v. Frady*, 456

U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Where a petitioner is unable to show cause, the Court need not consider actual prejudice. *See McCleskey*, 499 U.S. at 502, 111 S.Ct. 1454; see also *Acosta v. Giambruno*, 326 F.Supp.2d 513, 520 (S.D.N.Y.2004).

If a petitioner is not able to show cause for and prejudice from the procedural default, a federal habeas court may still review claims to prevent a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. 2639; *see also Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir.2002). The petitioner bears a high burden with respect to claims of actual innocence because entertaining such claims during habeas review is disruptive to the finality of criminal convictions and imposes a burden on the trial court. *See Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Without new, clearly exculpatory evidence, even a meritorious claim of a constitutional violation may be insufficient grounds for excusing a procedural default. *See Speringo v. McLaughlin*, 202 F.Supp.2d 178, 189–90 (S.D.N.Y. 2002) (*citing Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

## B. *CASTILLO'S CLAIMS*

### 1. *No Limiting Instruction for Uncharged Crimes Evidence*

▆ Castillo first argues that he was denied a fair trial because the trial court did not issue a limiting instruction with respect to uncharged crimes evidence from his arrest in Queens. As noted above, however, the Appellate Division explicitly

---

**8.** A federal habeas court is also precluded from reviewing claims when a state court both relies on independent and adequate state grounds, such as a procedural default, and also rules in the alternative on the merits of the federal claim. *Glenn*, 98 F.3d at 725.

deemed this claim unpreserved because defense counsel did not object at trial. Failure to preserve a claim constitutes a procedural default under New York state law, and is an independent and adequate state grounds for disposition of the claim. *See Reyes v. Keane,* 118 F.3d 136, 138 (2d Cir.1997); *People v. Walker,* 265 A.D.2d 192, 697 N.Y.S.2d 248, 249 (App. Div. 1st Dep't 1999). Accordingly, this Court can review the merits of the claim only if Castillo shows: 1) cause and prejudice, or 2) a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. Castillo has failed to show either.

As to cause and prejudice, Castillo suggests that the lack of objection resulted from ineffective assistance of counsel. Ineffective assistance of counsel can constitute cause sufficient to overcome a procedural default if the counsel's performance amounted to a constitutional violation, but "attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default." *McCleskey,* 499 U.S. at 494, 111 S.Ct. 1454; *see also Coleman,* 501 U.S. at 752–53, 111 S.Ct. 2546.

■ To demonstrate ineffective assistance of counsel, a petitioner must satisfy the two-part test outlined by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052. In doing so, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotations and citations

omitted). In effect, the petitioner must indicate "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, 104 S.Ct. 2052, and that the attorney "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances." *Boria v. Keane,* 99 F.3d 492, 496 (2d Cir.1996) (citation omitted). In assessing counsel's performance, "the court must be 'highly deferential,' must 'consider[ ] all the circumstances,' must make 'every effort ... to eliminate the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001) (*quoting Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052).

Second, a defendant must demonstrate actual prejudice to his case as a result of counsel's error. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. The "prejudice" prong of *Strickland* focuses on the impact of counsel's performance on the overall reliability and fairness of the proceeding and not simply on whether the outcome is affected. *See Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

■ Castillo has failed to demonstrate how his counsel's failure to object to the introduction of uncharged crimes evidence fell below an objective standard of reasonableness. Defense counsel and the prosecutor discussed the presentation of uncharged crimes evidence with the trial court before the trial and determined that the prosecution would introduce testimony only about the recovery of the weapon at the Queens arrest. (*See* Trial Transcript, filed February 15, 2006, ("Tr."), Vol. 1, at 159–62.) Although Castillo suggests that the prosecution in fact introduced "exten-

sive evidence" of the Queens incident, he has not specified when the prosecutor exceeded the pretrial determination or provided any other indication of why his attorney should have objected or asked for a limiting instruction. (*See* Pet. Mem. at 1.) Nor does the transcript of the proceedings suggest that evidence of the Queens incident was used improperly.

Even if Castillo could demonstrate that his counsel's performance fell below an objective standard of reasonableness for her failure to object, there is no indication that the character of the proceedings was affected by that omission. Castillo's counsel had the opportunity to cross-examine the witnesses who testified about his arrest in Queens and to address the jury in summation. In sum, Castillo cannot establish ineffective assistance of counsel or any other cause for the procedural default, and the Court need not consider the question of whether the procedural default resulted in prejudice to Castillo.

As to a fundamental miscarriage of justice, Castillo would need to submit new evidence pointing to his actual innocence in order to open the door for this Court to review the merits of this claim. *See Speringo*, 202 F.Supp.2d at 189–90. Castillo contends that he was not involved in the robberies, but he does not supply any new evidence in his habeas petition to raise the implication of actual innocence. Instead, the record contains ample evidence upon which the jury could have reasonably convicted Castillo, including witness identifications of Castillo in pretrial lineups and at trial, as well as identification of the gun recovered from him during the Queens incident as similar to those used in the previous robberies. In short, Castillo cannot overcome the procedural default, so this Court cannot consider his claim.

### 2. *Insufficient Evidence to Support Counts of the Indictment*

Castillo contends that based on the evidence adduced at trial, no rational jury could find him guilty of forcibly taking money from Chun–Ja Kim ("Kim"), an owner of A Tech Enterprises. Castillo further alleges that since he was convicted of taking property from the other store owner, Young Kim, convicting him of taking property from Kim would result in multiplicitous convictions. The state court decided this claim on the merits. Accordingly, this Court can grant habeas relief only if this determination resulted in a decision contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence adduced. *See* 28 U.S.C. § 2254(d).

■ The sufficiency of the evidence presented at a state trial "is essentially a question of state law and does not rise to federal constitutional dimensions ... absent a record so totally devoid of evidentiary support that a due process issue is raised." *Mapp v. Warden, New York State Corr. Inst. for Women*, 531 F.2d 1167, 1173 n. 8 (2d Cir.1976) (internal quotations and citations omitted). Accordingly, a petitioner "bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002).

■ Under 28 U.S.C. § 2254(e)(1), factual determinations made by the state court are presumed to be correct, and the petitioner carries the burden to rebut this presumption by clear and convincing evidence. Consequently, this Court will not set aside those findings unless "the material facts were not adequately developed" or the factual determinations are not fairly supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir.1999). A habeas

court must view the evidence in a light most favorable to the state and grant relief to the petitioner only if "no rational trier of fact" could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial. *Ponnapula,* 297 F.3d at 179 (*citing Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560).

 The record in this case contains sufficient evidence from which the jury could determine that Castillo forcibly took money from Kim. The trial court ruled that a jury could find Kim to have been a victim since she qualified as an owner of a store where one of the robberies occurred, and the jury heard testimony describing Kim as an owner. Witnesses identified Castillo's gun as similar to that used in the A Tech Enterprises robbery and identified Castillo in a pretrial lineup and at trial. In addition, cross-examination of Castillo suggested weaknesses in his alibi. (*See* Tr., Vol. 2, at 503–09.) Given this evidentiary support, the Court must defer to the state court factual determinations of Castillo's guilt.

 The Court now considers Castillo's claim concerning multiplicitous convictions. An indictment is multiplicitous under New York law when one offense is charged in more than one count. *See Grady v. Artuz,* 931 F.Supp. 1048, 1059, n. 6 (S.D.N.Y.1996). "Multiplicity does not exist, however, if 'each count requires proof of an additional fact that the other does not.'" *Lee v. Ricks,* 388 F.Supp.2d 141, 154 (S.D.N.Y.2005) (*quoting People v. Demetsenare,* 243 A.D.2d 777, 663 N.Y.S.2d 299, 302 (App. Div.3d Dep't 1997)).

 Castillo seems to argue that since property was taken from A Tech Enterprises in the course of one robbery, there should only be one count of robbery for property taken from the store owners. This allegation lacks merit. Because the jury heard testimony that Kim was also a store owner, it could have found that store property was in essence taken from two separate individuals. This would constitute "two distinct acts of robbery, regardless of their occurrence in the course of a single or consolidated, criminal transactions." *People v. Batista,* 137 A.D.2d 695, 524 N.Y.S.2d 785, 786 (App. Div.2d Dep't 1988). Accordingly, Castillo is not entitled to habeas relief on this ground.

### 3. Ineffective Assistance of Counsel

Castillo asserts that he received ineffective assistance of counsel because his attorney (1) failed to request a sanction or an adverse inference charge in relation to missing 911 tapes, (2) failed to point out that witness identifications were "general" and did not describe Castillo's distinguishing features, (3) failed to be present at pre-trial line-up identifications and to identify problems with the line-ups, (4) failed to object to his unlawful arrest made without probable cause and to evidence seized during an unlawful search, and (5) psychologically intimidated him into answering questions in the affirmative on cross-examination.

All allegations in an ineffective assistance of counsel claim must have been presented to the state courts first, giving them the "opportunity to consider all the circumstances and cumulative effect of the claims as a whole." *Sanford v. Senkowski,* 791 F.Supp. 66, 68 (E.D.N.Y.1992) (*quoting Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991)); *see also Caballero v. Keane,* 42 F.3d 738, 740–41 (2d Cir.1994).

 Castillo raised his first ineffective assistance of counsel allegation (regarding missing 911 tapes) in his pro se brief to the Appellate Division, but he raised his remaining claims for the first time in his

reply brief to this Court. Since unexhausted state procedures were available for Castillo's new allegations, dismissal is appropriate for these claims. *See Daye*, 696 F.2d at 191.

As to the 911 tapes, Castillo asserts that he was prejudiced by counsel's failure to request an adverse inference charge or other sanction for missing 911 tapes containing recordings of phone calls giving descriptions of the robbery perpetrators. He contends that the tapes, which he describes as *Rosario* material, could have been used to identify weaknesses in witnesses' identification testimony. To prevail on this ineffective assistance of counsel claim, Castillo would again need to satisfy the two-pronged *Strickland* test outlined above: unreasonable representation, and actual prejudice from counsel's error. He has not done so here.

■■■ To begin, under *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), the prosecution is required to turn over *witnesses'* prior statements before their testimony in court. Here, however, the 911 tapes contained calls made by individuals who were not called as witnesses, so the tapes do not qualify as *Rosario* material.[9] *See Green v. Artuz*, 990 F.Supp. 267, 274 (S.D.N.Y. 1998); *In re Christopher W.*, 202 A.D.2d 305, 609 N.Y.S.2d 194, 194 (App. Div. 1st Dep't 1994). Given that the tapes were not *Rosario* material, counsel did not need to object to not having them. Moreover, even if the prosecution were required to turn over the tapes under *Rosario*, defense counsel apparently received transcripts of

the tapes, which would have provided the same information.

■■■ The Court notes that defense counsel initially indicated her intention to object to the missing tapes at the beginning of the trial, but did not actually do so. (*See* Tr., Vol. 2, at 2.) However, given the wide range of acceptable professional conduct in these circumstances, the Court can only speculate as to many reasonable considerations that would have led counsel not to object. For instance, receiving the transcripts may have been sufficient or the material contained on the tapes could have been damaging to her client. Nothing in the record suggests that counsel's behavior here was improper.

Even if counsel's failure to object on this point did fall below the objective standard of reasonable behavior, Castillo has failed to show how he was prejudiced by counsel's omission. There is no indication that by not requesting a sanction or adverse inference charge, Castillo's counsel affected the integrity or reliability of his trial proceeding. Indeed, as noted above, significant other evidence of Castillo's guilt was presented at trial, and additionally, Castillo's counsel objected to identification testimony where appropriate. The Court cannot grant Castillo habeas relief on this claim.

4. *Curative or Adverse Inference Charge or Independent Source Hearing for Identifications*

Castillo takes issue with the testimony of witnesses who did not identify Castillo during pretrial lineups but did identify him

---

**9.** It is unclear how many 911 tapes are at issue and whose calls they record. Castillo's trial counsel made reference to three missing 911 tapes before the trial began. (*See* Tr., Vol. 2, at 2.) Respondent now explains that the 911 tape following the Sahara Furniture incident records a call to the police from a

neighbor, who did not testify at trial. (*See* Resp. Mem. at 31.) Respondent does not discuss other tapes. Castillo asserts that "there was confusion as to who called the police" (Pet. Mem. at 4), but does not assert that any missing 911 tapes record calls by witnesses eventually called at trial.

in court. Castillo claims that he was denied his Fourteenth Amendment right to due process because the trial court did not issue a curative or adverse inference charge with regard to this testimony and did not hold an independent source hearing. As the Appellate Division dismissed this claim on the merits, this Court reviews the claim only to determine whether the state court determination resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as defined by the Supreme Court. *See* 28 U.S.C. § 2254(a).

In two key decisions, the Supreme Court identified due process considerations relevant to pretrial identifications. In *Neil v. Biggers*, the Court held that when identifications have been made in a suggestive context, an independent basis of reliability must be shown prior to admission. *See* 409 U.S. 188, 199–201, 93 S.Ct. 375, 34 L.Ed.2d 401 (1992). The *Biggers* Court identified five considerations for determining reliability: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.*, at 199–200, 93 S.Ct. 375. In *Manson v. Brathwaite*, the Supreme Court held that eyewitness identification testimony that involves a substantial risk of misidentification must be excluded. *See* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■■■ The Second Circuit has considered the application of these due process considerations to in-court identifications in cases like Castillo's, where a witness was unable to identify the defendant at a pretrial lineup. *See Kennaugh v. Miller*, 289 F.3d 36, 46 (2d Cir.2002). The Court found that "the specific set of procedures established by the Supreme Court in *Biggers* are not mandated ... in the context of initial in-court identifications," as long as the state court has followed alternative reasonable procedures to meet the Supreme Court's due process requirements. *Id.* at 45. For example, a state court could check whether "sufficient independent evidence of the defendant's guilt existed to support the reliability of the identification." *Id.* at 47.[10] In short, "where the circumstances of either a pretrial or an at-trial identification are suggestive, reliability is the linchpin for determining admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir.1994).

■■■ Castillo's trial counsel raised the issue of a curative or adverse inference charge or independent source hearing with respect to not receiving notice that the witnesses would be making in-court identifications, rather than directly challenging the reliability of the identifications. (*See* Tr., Vol. 2, at 245–46, 304–07.) In rejecting these requests, the trial court correctly noted that the purpose of giving notice of in-court identifications is to provide the defendant adequate opportunity to test the suggestiveness of police identification procedures, pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (holding that, to protect defendant's Sixth Amendment rights, a court must determine whether witness identification testimony was tainted by impermissibly suggestive procedures). The trial court rightly stated, however, that no such remedy was needed here because

---

**10.** The Second Circuit rejected this approach for federal courts in this circuit, but acknowledged that state courts may still use independent evidence to satisfy *Biggers* and *Manson*. *See Kennaugh*, 289 F.3d at 47; *Raheem v. Kelly*, 257 F.3d 122, 140 (2d Cir.2001).

there had been no previous identifications by these witnesses while at the police line-up. In addition, trial counsel had the opportunity to address the reliability of the in-court identifications during the course of the trial, presumably through cross-examination. (*Id.*) *See* N.Y. CLS CPL § 710.30 (requiring notice to defendant of prosecution's intent to offer identification by a witness who made a pretrial identification); *People v. Trottie*, 167 A.D.2d 438, 561 N.Y.S.2d 841, 842 (App. Div.2d Dep't 1990) (holding it was not error to admit in-court identifications for the first time without notice to defendant since witnesses had not made pretrial identifications and counsel had the opportunity to cross-examine the witnesses).

Despite that the witnesses in question did not identify Castillo before their in-court identifications, Castillo appears to attack the potential suggestiveness of the pretrial lineup procedures. He blames the "missing" 911 tapes for an inability to check the callers' descriptions of the perpetrators to see whether they were unduly suggestive or unreliable and further asserts that witnesses who identified him at trial must have talked to others who identified him in the lineups. The trial court noted that the hearing court considered extensive testimony about the pretrial lineup procedures and found that they were fair and did not violate Castillo's due process rights. (*See* Tr., Vol. 1, at 154–57; Tr., Vol. 2, at 245–46.) Castillo argues that his counsel's timely objections should have nonetheless compelled the trial court to hold an independent source hearing to determine reliability. (*See* Def. Br. at 25.)

The purpose of an independent source hearing is to determine whether identification testimony made by a witness under *suggestive* circumstances has a separate independent source that would render it reliable. An independent source hearing need not be held when identification testimony is simply weak. "There must be some sort of police or prosecutorial misconduct before the independent source hearing doctrine is imposed." *Hoover v. Leonardo*, No. 91 Civ. 0211, 1996 WL 1088204, at *25–28 (E.D.N.Y. June 17, 1996); *People v. Chipp*, 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608, 613 (1990) ("Absent some showing of impermissible suggestiveness ... there is no burden upon the People, nor is there any need, to demonstrate that a source independent of the pretrial identification procedure exists for the witness's in-court identification.") (internal citations omitted). The trial court found no indication of suggestiveness in the pretrial proceedings and determined that trial counsel could address any potential suggestiveness of the in-court identification during the trial proceedings. As such, an independent source hearing was not warranted.

Castillo further argues that the in-court identifications were improper because the *Biggers* considerations pointing to reliability have not been demonstrated here. Specifically, while Castillo concedes that all of the witnesses "had ample opportunity to see appellant prior to the beginning of the robbery," he questions the accuracy and certainty of the identifications. (Def. Br. at 26.) However, absent impermissibly suggestive procedures, "independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury." *United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir.1994) (citations omitted).

Nonetheless, the reliability of the identifications was addressed at several points during the state court proceeding. Castillo's attorney had the opportunity on cross-examination to "effectively challenge the credibility and reliability" of the witnesses' identifications. *Dow v. Walsh*, No. 03 Civ.

**570**

424, 2006 WL 484783, at \*21–24 (E.D.N.Y. Feb. 28, 2006); *see also Kennaugh v. Miller*, 289 F.3d 36, 48 (2d. Cir.2002). In addition, the trial court gave the jury detailed cautionary instructions about assessing the reliability of identification testimony given by witnesses. Specifically, the trial judge instructed the jurors to consider: lighting conditions, distance between the witness and perpetrators, whether the witness's view was unobstructed, whether the witness had the opportunity to observe and remember distinctive features about the perpetrator during the commission of the crime, how much time elapsed, how long the witnesses observed the perpetrators, whether the perpetrator had distinctive features that a witness would be likely to remember, the mental and emotional states of the witnesses, and the general credibility of the witnesses. (*See* Tr., Vol. 3, at 611–13). Finally, given the independent evidence of Castillo's guilt, any error resulting from the in-court identification would be harmless. *See Kennaugh*, 289 F.3d at 48.

In sum, there is no indication that the trial court violated federal law concerning Castillo's due process rights by admitting identification testimony without an independent source hearing or curative or adverse inference charge. Accordingly, Castillo is not entitled to habeas relief on this ground.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the petition of Petitioner Elvis Castillo for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Castillo has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**